**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

In the Matter of:　　　　　　　　　　　　　　　　　Case No. **20-01414-lmj13**

**Mark Wade Curtis**,

　　　　　　Debtor

**Mark Wade Curtis**,　　　　　　　　　　　　　　Adv. Pro. No. **20-30090-lmj**

　　　　　　Plaintiff　　　　　　　　　　　　　　　[UNPUBLISHED]

v.

**Misha Lea Curtis**,

　　　　　　Defendant

**MEMORANDUM OF DECISION
(date entered on docket: August 30, 2021)**

On September 15, 2020, while representing himself, Chapter 13 Debtor Mark Wade Curtis ("Debtor") filed a multi-faceted complaint against his former spouse, Misha Lea Curtis ("Defendant") who, through counsel, had filed a priority unsecured claim related to attorney fees awarded in state court dissolution proceedings (Claim 9-1 timely filed August 31, 2020), a general unsecured claim related to a property settlement (Claim 10-1 timely filed August 31, 2020), and a priority unsecured claim related to a hold harmless provision regarding federal tax debt (Claim 11-1 timely filed August 31, 2020 and amended October 15, 2020). After conducting a status hearing on October 21, 2020, this Court entered an order limiting the scope of this adversary proceeding to determining whether Claims 9-1 and 11-2 were 11 U.S.C. § 101(14A) domestic support obligations (making them 11 U.S.C. § 523(a)(5) nondischargeable debts entitled to priority and full payment during the term of the plan pursuant to 11 U.S.C. §§ 1322(a)(2) and 507(a)(1)(A)) and to determining the actual amount owing for both the priority unsecured claims and the general unsecured claim. (Docket No. 7.) Additionally, to the extent

certain filings by Debtor in the chapter case could be construed as objections to the claims, those filings would be considered in conjunction with this proceeding. (Id.)

By the time of the April 23, 2021 trial, at which point both parties were represented by counsel, Defendant had amended Claim 9-1 twice, Claim 10-1 twice and Claim 11-2 once. Additionally, during a January 12, 2021 hearing on pending motions, at which time debtor was still acting pro se, the parties agreed to the amount set forth on Claim 10-3. Accordingly this Court entered an order allowing the general unsecured claim in the amount of $89,337.34. (Docket No. 18.)

The Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1334 and the standing order of reference entered by the United States District Court for the Southern District of Iowa. This is a core matter under 28 U.S.C. section 157(b)(2)(B) and (I). Having reviewed the relevant bankruptcy dockets, the trial transcript, Exhibits A through M attached to Claim 9-3 and Exhibits N and O attached to Claim 11-3 and having considered the arguments of the parties, the Court enters its decision in favor of Debtor with regard to three portions of Claim 9-3 and to Claim 11-3 and in favor of Defendant with regard to one portion of Claim 9-3.

BACKGROUND

On September 28, 2017 Defendant filed a petition for dissolution of marriage in the Iowa District Court in and for Adams County ("state court") under Case Number CDDM015394, and the state court entered a Decree of Dissolution ("Decree") on August 29, 2018. (Exhibit B.) As noted by the state court in its August 8, 2018 Findings of Fact and Conclusions of Law, Debtor and Defendant married on July 30, 2005, and two children were born of the marriage. (Exhibit A at 1.) The state court awarded Defendant child support, spousal support/alimony, and attorney fees in the amount of $20,000.00. It awarded Debtor the bulk of the marital assets and debts, including those related to the businesses the parties owned equally. As a result of that property settlement, the state court ordered Debtor to pay a $150,000.00 equalization payment to Defendant by January 1, 2019 with interest to accrue on any amount unpaid after that date. (Id.

at 6-8, 11-12 and 23-25.) The state court also assigned $26,446.00 of back tax debt owed the Internal Revenue Service ("IRS") to Debtor and ordered him to hold Defendant harmless from that debt. (Id. at 11 and 24.)

On April 9, 2019 Defendant filed a two count Application for Order for Rule to Show Cause and Request to Waive Mediation with the state court. (Exhibit C.) She alleged Debtor refused to make court ordered spousal support/alimony payments and violated charging and income withholding orders. On June 5, 2019 the state court entered an order ("First Contempt Order") finding Debtor had willfully and wantonly disobeyed its order to pay Defendant spousal support/alimony for the months of October 2018 through April 2019, had willfully and wantonly disobeyed its order to pay Defendant's $20,000.00 attorney fees, and had willfully and wantonly disobeyed its charging order regarding the distribution of proceeds from the sale of certain assets. (Exhibit D.) In accordance with Iowa Code § 598.23 (Contempt proceedings—alternatives to jail sentence), the state court held Debtor in contempt and sentenced him to 15 days in the Adams County Jail for failure to pay spousal support/alimony and to a consecutive 15 days for violating the charging order unless Debtor purged his contempt by bringing spousal support/alimony current and paying the attorney fees awarded in the Decree prior to a compliance hearing scheduled for August 27, 2019. The state court added it would consider Defendant's request to pierce the corporate veil of Debtor's three limited liability companies if Debtor failed to purge his contempt. The state court also indicated Debtor would be responsible for Defendant's "reasonable attorney fees incurred by her due to his contemptuous behavior" and directed Defendant to file an affidavit of attorney fees related to the contempt proceeding within 30 days. (Id. at 7.) On July 26, 2019 the state court entered an order supplementing the First Contempt Order and directing Debtor to pay the Defendant $7,050.00 in attorney fees within 60 days of the date of the supplemental order. (Exhibit E.)

On July 31, 2019 Defendant filed an eight count second Application for Order for Rule to Show Cause and Request to Waive Mediation. (Exhibit F.) She alleged Debtor refused to pay

child support, child medical expenses, and spousal support/alimony, violated charging orders, and refused to comply with various aspects of the Decree's distribution of property. On August 23, 2019, after noting Defendant withdrew the spousal support/alimony count at a hearing the prior day due to a decision from the Court of Appeals of Iowa ("appellate court"), the state court entered an order ("Second Contempt Order") holding Debtor guilty of contempt as to the remaining seven counts because it found he had willfully, wantonly and knowingly violated the Decree and charging orders with respect to those counts. (Exhibit G.) Specifically with regard to the child support count and the child medical expenses count, the state court found debtor violated the Decree by not paying child support for May and June of that year and cash medical support for October 2018 and for January through July of that year. Once again in accordance with Iowa Code § 598.23, it sentenced him to ten days in the Adams County Jail for each of those counts and for each of four other counts. The sentences were to run consecutively. The state court provided Debtor could purge the contempt as to those six counts by paying Defendant $100,000.00 toward the property award by November 1, 2019 and attorney fees related to the contempt proceeding within 90 days (in an amount to be determined after Defendant filed an affidavit of attorney fees by August 30, 2019) and by becoming current on all financial obligations to the Defendant within 90 days. It scheduled a compliance review hearing for December 3, 2019. In lieu of a jail sentence for the count based on Debtor's violation of a charging order by taking distributions from one of his three limited liability companies, the state court pierced the corporate veil of each and ordered that all of Debtor's obligations would be joint and several obligations of the Debtor and the three companies. On August 27, 2019 the state court entered an order supplementing the Second Contempt Order and directing Debtor to pay the Defendant $4,560.00 in attorney fees within 90 days of the date of the Second Contempt Order. (Exhibit H.)

On September 4, 2019 Defendant signed her 1040 Tax Return for 2018. (Exhibit N.) She sought a full refund of her $7,497.00 overpayment. In a notice dated October 21, 2019, the IRS

informed Defendant $7,018.39 of the overpayment had been applied to tax owed on the 2012 tax return and the remainder had been applied to tax owed on the 2015 tax return. (Exhibit O.) Defendant testified the IRS also offset her 2019 refund of $4,200.00 against the back tax debt. (Tr. 34, ll. 5-19.)

On November 13, 2019 Debtor, through counsel, filed his first petition for relief under Chapter 13 of Title 11 of the United States Code. (Case No. 19-02669-lmj13 at Docket No. 1.) On January 16, 2020 Debtor, through counsel, filed a motion to dismiss his case. (Id. at Docket No. 30.) On January 17, 2020 this Court dismissed the case as required by 11 U.S.C. § 1307(b) which mandates dismissal upon a debtor's request unless the case has been converted from Chapter 7, 11 or 12. The dismissal, however, was with prejudice pursuant to 11 U.S.C. § 109(g)(2). (Id. at Docket No. 31.) That is, Debtor was barred from commencing another bankruptcy case for 180 days because he sought a voluntary dismissal after a creditor (the Defendant) had filed a request for relief from the automatic stay. (On December 26, 2019 Defendant requested relief from the stay to permit the sale of certain real estate and personal property as ordered by the state court and requested a comfort order clarifying she could pursue modification of child support without violating the stay. (Id. at Docket No. 15.) Debtor did not contest the motion. On January 7, 2020 this Court entered an order granting the motion. (Id. at Docket No. 28.))

On February 13, 2020 Defendant filed a twenty-two count third Application for Order for Rule to Show Cause and Request to Waive Mediation. (Exhibit K.) She alleged Debtor refused to hold her harmless with respect to back taxes for 2012 and 2015, failed to maintain insurance on three properties from September 2019 through January 2020 and, contrary to the terms of a May 19, 2019 state court order resolving competing contempt applications, failed to sell certain business assets and property, and violated a state court order for writ of temporary injunction on four occasions. On May 4, 2020 the state court entered an order finding Debtor had willfully, wantonly and knowingly failed to hold Defendant harmless as to the refund offset, to provide

insurance coverage, and to sell certain business assets and property, and had willfully, wantonly and knowingly violated the court's temporary injunction entered January 25, 2020. (Exhibit L.) As to the hold harmless count, the state court sentenced Debtor to 30 days in the Adams County Jail but allowed Debtor to purge the contempt by paying Defendant $7,497.00 plus 5% interest per annum from April 1, 2019 no later than October 1, 2020. With respect to the sale of certain business assets and property and in lieu of a jail sentence, the state court ordered Debtor to execute a quitclaim deed in favor of Defendant as to the building in issue, including all contents and possessions contained therein, and indicated it would enter an order directing the clerk of court to change the title of the building to Defendant, including all contents and property contained therein, if Debtor failed to execute the quitclaim deed. With respect to the other twenty counts, the state court imposed a 30 day suspended sentence for each and indicated the twenty-one sentences would run concurrently if Debtor was not in compliance with the order by the time the matter was reviewed at a hearing on October 1, 2020. Lastly the state court indicated Debtor would be responsible for Defendant's attorney fees and directed Defendant to file an affidavit of attorney fees for consideration at the follow-up hearing.

On May 4, 2020 the state court also entered on order addressing Defendant's Application for Order for Sanctions and Order for Stay. (The application was not included in the exhibits and this Court has not been able to locate it in any docket entry in this proceeding or in the related Chapter 13 case.) The state court detailed the litigation that had occurred since early August of 2018 and concluded Debtor's actions were vengeful and meant to harass or intimidate Defendant and, therefore, were frivolous and subject to sanctions. The state court enjoined Debtor from pursuing any further legal action in that forum and stayed all pending proceedings initiated by Debtor until a number of conditions were met—including payment of Defendant's attorney fees. (Exhibit M.)

Meanwhile, on April 14, 2020 Defendant filed a Motion to Dismiss and Application for Sanctions in Case Number CVC016481, a lawsuit Debtor and his three alter ego limited liability

companies had commenced on March 30, 2020 against her, her limited liability company and other parties in the Iowa District Court in and for Adams County. (Exhibit I.) She alleged Debtor's numerous causes of action mirrored claims he had advanced in two lawsuits in the Iowa District Court in and for Polk County within the preceding year. She accused him of carrying out a "vengeful crusade of using the courts and legal system to harass" her. (Id. at 2.) On June 9, 2020, in accordance with Iowa Rule of Civil Procedure 1.413(1) and (2) (Verification abolished; affidavits; certification), the state court entered a lengthy Order for Sanctions and Stay ("Sanctions Order") directing Debtor and his companies jointly and severally to pay Defendant $3,990.00 in attorney fees and enjoining him and his business entities from pursuing any further legal action in that forum until a number of conditions were met—including payment of Defendant's attorney fees. (Exhibit J.)

On July 16, 2020 Debtor, acting pro se, commenced his second Chapter 13 case which is the one related to this adversary proceeding. (Case No. 20-01414-lmj13 at Docket No. 1.) The automatic stay expired 30 days later by operation of 11 U.S.C. § 362(c)(3)(A) and (B) because less than a year had elapsed since the dismissal of his first case and Debtor had failed to file a motion to extend the stay within the 30 day time frame. On November 5, 2020 Debtor filed a motion essentially seeking a reinstatement of the stay. (Id. at Docket No. 42.) On November 18, 2020, after conducting a hearing on Debtor's motion and Defendant's objection, this Court entered an order temporarily reinstating the stay pursuant to 11 U.S.C. §105(a)—subject to debtor making postpetition child support payments in a timely fashion. (Id. at Docket No. 48.)

At a February 17, 2021 hearing on the contested modified plan and the status of the stay, the Chapter 13 trustee noted the feasibility of the pending modified plan rested on the outcome of the controversy over Claims 9-3 and 11-3. Defendant's counsel reported his client had not advised him of any delinquency in child support payments. Debtor's counsel was new to the case. Accordingly, this Court ordered Debtor and Defendant to submit a status report

regarding any settlement of the claim controversies by March 17, 2021 and extended the stay for further consideration either in conjunction with a trial in this proceeding or, if a settlement disposed of the need for a trial, at a separate status hearing. Once again, the extension was contingent upon Debtor keeping child support payments current. No specific directive was given about the pending modified plan because whether it was confirmable as written or would require further modification could not be determined at that time. (Id. at Docket Nos. 58 and 59.)

Debtor and Defendant did not reach a settlement. At the April 23, 2021 trial, Defendant testified she had been receiving child support payments. (Tr. 36, l. 23 to 37, l. 2.) Accordingly, this Court entered an order conditionally extending the stay while the disposition of this proceeding was under advisement. (Id. at Docket No. 62.)

## APPLICABLE LAW

11 U.S.C. Section § 523(a)(5) excepts debts for domestic support obligations from discharge. 11 U.S.C. § 101(14A) defines a domestic support obligation as:

> [A] debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
> (A) owed to or recoverable by—
>   (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>   (ii) a governmental unit;
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>   (i) a separation agreement, divorce decree, or property settlement agreement;
>   (ii) an order of a court of record; or
>   (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
> (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

Whether a particular debt is in the nature of alimony, maintenance, or support is a question of federal bankruptcy law, not state law. *Williams v. Williams (In re Williams)*, 703 F.2d 1055, 1056 (8th Cir. 1983). A state court's characterization of an award as a support obligation

is a starting point in the determination of the award's intended purpose but does not bind a bankruptcy court. *Phegley v. Phegley (In re Phegley*, 443 B.R. 154, 158 (B.A.P. 8th Cir. 2011). "[T]he crucial issue is the function the award was intended to serve." *Williams*, 703 F.2d at 1057. In reviewing the crucial issue in the context of a dissolution decree, the *Phegley* bankruptcy appellate panel identified the relevant factors as including:

> [T]he language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary; the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments.

*Phegley*, 443 B.R. at 158 (citations omitted). Whether a particular debt is the product of an agreement or created by a court order, the inquiry remains the same. *Adams v.* Zentz, 963 F.2d 197, 200 n.6 (8th Cir. 1992). Exceptions from discharge for domestic support obligations are subject to liberal construction because public policy favors enforcement of familial obligations over a debtor's opportunity for a fresh start. *Phegley*, 443 B.R. at 158. The burden of proof is on the party asserting a debt is nondischargeable. *Id.* The standard of proof is a preponderance of the evidence. *Grogan v Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d, 755, 767 (1991).

## DISCUSSION

The parties do not dispute the debts set forth in Claims 9-3 and 11-3 are owed to Debtor's former spouse, were established by either the Decree or subsequent court order, and have not been assigned. Additionally, it should be noted any issue regarding the amounts of these two claims faded away at trial. Debtor did not present any evidence tending to overcome the prima facie evidentiary effect of the two claims and appeared to accept the stated dollar amounts. (Tr. 16, ll. 5-25, and Tr. 25, l. 1 to 26, l. 8.) Hence, the single point of contention is whether the debts are in the nature of alimony, maintenance, or support.

Defendant argues the attorney fee awards and the hold harmless provision are non-dischargeable domestic support obligations entitled to full payment during the plan term. Debtor maintains these debts are not domestic support obligations and, while they would be nondischargeable pursuant to 11 U.S.C. § 523(a)(15) in a Chapter 7, Chapter 11 or Chapter 12 case, they are dischargeable in a Chapter 13 case by operation of 11 U.S.C. § 1328(a)(2) that excludes § 523(a)(15) from the list of paragraphs in § 523(a) that are applicable in a Chapter 13 case.

### Claim 9-3 (Attorney Fee Awards)

Although Defendant aggregated the four awards into one claim, the facts behind each award are not identical. Accordingly, this Court will analyze each award individually. Parenthetically, it should be noted the four awards total $35,600.00—not the $35,700.00 sum set forth on Official Form 410.

I. Disposition of the $20,000.00 Attorney Fee Award Under the Decree

In support of her contention the state court intended this award to serve as a domestic support obligation, Defendant observes the state court stated "[t]he controlling factor in fixing attorney fees is ability to pay." (Exhibit A at 19.) She notes the state court referred to the difference between her earning capacity and that of the Debtor throughout the Findings of Fact and Conclusions of Law. Indeed, in the analysis of this award, the state court did find "[f]ollowing the divorce, the respondent will have the bulk of the parties' assets and the far greater earning capacity, at least until petitioner can complete her education and/or expand her employment." (Id.)

In support of his contention the state court intended this award to be part of the property settlement, Debtor points out the state court explained it had "adjusted the property settlement to provide the respondent with some additional assets from which to satisfy the attorney fee obligation if he desires to use them for that purpose." (Id.) While this sentence by itself might imply the award was intended to serve as a division of the marital property, it is not dispositive.

The state court also concluded Defendant was entitled to rehabilitative alimony because "the court's property division has effectively removed petitioner from the work force except for her occasional shifts as a nurse." (Id. at 9.) The mere fact an attorney fee award is related in some way to a property settlement does not necessarily make the award a component of that property settlement. *See Phegley*, 443 B.R. at 159 (rejecting, based on precedent from the United States Court of Appeals for the Eighth Circuit and on principle, the argument that "source of funding" is the appropriate test for determining whether an award in a decree of dissolution is a domestic support obligation).

Arguably the inclusion of the award in the detailed property settlement exhibit attached to the state court's Findings of Fact and Conclusions of Law might imply it is not a domestic support obligation. (Exhibit A at 25.) However, the placement of the award at the end of the exhibit and the fact it, unlike the equalization payment, is represented only as a debit from Debtor without a corresponding credit to Defendant, suggests the award should be considered something separate and apart from the other items in the exhibit.

In his January 4, 2021 pro se objection (Docket No. 15) to Defendant's December 30, 2020 motion for summary judgment (Docket No. 14), in his pro se comments attached to the January 5, 2021 Trial Stipulation (Docket No. 16 at 7-8), at the April 23, 2021 trial through his attorney (Tr. 8, l. 13 to 9, l. 13), and in his July 23, 2021 post trial argument (Docket No. 32, filed pro se rather than through counsel), Debtor seeks to undermine the state court assessment based on the outcome of his appeal from the Decree. Although this Court sustained the objection by Defendant's counsel to Debtor's counsel questioning Debtor regarding the appeal, that ruling was based on the appellate decision not being a marked exhibit and on a mistaken impression that the reference by Debtor's counsel to the decision being "a matter of court record that the Court would be able to review" (Tr. 9, ll. 7-8) meant an appellate court docket item that was not part of the bankruptcy court docket. In fact, the August 7, 2019 decision entered by the

appellate court in Case No. 18-1519 is contained in Docket No. 15 at pages 27 through 44 and should be considered part of the record in this proceeding.

In addressing Debtor's challenges to the spousal support, child support, property distribution, visitation and attorney fee provisions in the Decree, the appellate court made numerous findings of fact. Debtor focuses on the appellate court's lowering and shortening the rehabilitative spousal support from $3,000.00 per month for one year, followed by $2,000.00 per month for one year, followed by $1,000.00 per month for one year to $1,000.00 per month for one year, followed by $500.00 per month for six months based on its conclusion Defendant would only need that amount while she completed work on a master's degree and on its uncertainty over Debtor's ability to pay the full amount awarded in the Decree. Debtor also points out the appellate court remanded a determination of the child support obligation based on the curtailed spousal support award and an anticipated increase in Defendant's income. Neither disposition, however, is of moment because the statutory language does not require this Court to make "a precise inquiry into financial circumstances to determine precise levels of need or support" or to make "an ongoing assessment of need as circumstances change." *Draper v Draper*, 790 F.2d 52, 54 (8th Cir. 1986) quoting *Harrel v. Harrel (In re Harrel)*, 754 F.2d 902, 906 (11th Cir. 1985). Notably, the appellate court did not find Defendant had no need for any type of spousal support.

With respect to the $20,000.00 attorney fee award, the appellate court stated Iowa law required the fees to be fair and reasonable and to be awarded based on the relative financial positions of the parties. Observing that the dissolution litigation had been highly contentious, it concluded the state court had not abused its discretion in making the award. Then the appellate court closed its one paragraph discussion about the award by stating "[i]n any event, the court factored the award into the property distribution, and we conclude a vacation or any downward modification of the award would render the distribution inequitable. We affirm the award of attorney fees." (Docket No. 15 at 42.) This characterization of the award, however, is of no

moment because this Court's role in determining whether the award is a domestic support obligation under federal law is not the equivalent of the role exercised by the appellate court in determining whether the award should be upheld under Iowa law.

Based on the record reviewed and analyzed above, this Court concludes the state court intended the obligation created by the $20,000.00 attorney fee award to be in the nature of alimony, maintenance or support. In sum, a preponderance of the evidence supports Defendant's argument.

II. Disposition of Attorney Fee Awards Under the Contempt and Sanctions Orders

Relying on *Amos v. Carpenter (In re Amos)*, 624 B.R. 657 (B.A.P. 8th Cir. 2021) and cases cited therein, Defendant argues these awards are domestic support obligations because the contempt actions included efforts to enforce support payments required by the Decree and her paying the fees associated with those actions and the sanctions action would result in her having less money to expend on the parties' two children. Debtor contends these awards are punitive in nature.

This Court has not located any decision from the United States Supreme Court or the United States Court of Appeals for the Eighth Circuit that holds an attorney fee award resulting from an action to enforce court ordered alimony, maintenance or support is in and of itself a nondischargeable domestic support obligation. In the *Amos* decision, the United States Bankruptcy Appellate Panel of the Eighth Circuit noted a majority of courts have concluded attorney fee awards related to child support, visitation or custody issues affecting the welfare of the child qualify as domestic support obligations. *Id.* at 662. It, however, did not cite any controlling case authority that would mandate this Court automatically conclude an award of attorney fees related to an action to enforce a dissolution decree must be deemed a domestic support obligation as long as the provision to be enforced is one concerning alimony, maintenance or support that might impact the welfare of the parties' children.

Rather, the fact an attorney fee award arises from child support, visitation or custody litigation does not necessarily make the award a domestic support obligation. In *Adams*, 963 F.2d at 200, the United States Court of Appeals for the Eighth Circuit upheld a bankruptcy court's determination that an attorney fee award arising from an action to enforce visitation rights was not a domestic support obligation. The circuit court acknowledged the record could be read to support the district court's reversal of the bankruptcy court's finding that the fees were not really related to the custody battle but were related to the desire of the debtor's former spouse to enforce that spouse's rights against the debtor. It nevertheless was not definitely and firmly convinced the bankruptcy court's finding was clearly erroneous because the state court made numerous findings regarding the negative impact the debtor's behavior had on the former spouse but made no such determinations regarding the welfare of the child. *Id.* at 200 - 201.

In further addressing attorney fee awards stemming from post dissolution litigation over child support and custody, the *Amos* court rejected the appellant's argument that "[t]he 8th Circuit requires a bankruptcy court to consider the financial disposition of the parties in the context of the award." *Id.* at 661. It did so based on its reading of the *Draper* court's quotation from the *Harrell* decision that was mentioned earlier in this memorandum of decision. It is important to note both the *Draper* court and the *Harrell* court were dealing with appellant requests to review the nature of the obligations in light of interim changed circumstances rather than to assess the nature of the obligations at the time the obligations were created by the state courts.

Accordingly, the crucial question in each instance remains whether the state court intended the award to be a support obligation, and answering that question should include a review of the state court's findings—including any regarding the financial needs of the parties at the time the award was granted

(A) Disposition of the $7,050.00 Attorney Fee Award Under the First Contempt Order

The two count contempt action did not involve child support, visitation, or custody, and there is no indication in the order that the award was related to the welfare of the children. The action did concern Debtor's failure to pay spousal support/alimony. That count, however, was in addition to the count regarding his failure to comply with charging orders and income withholding orders. Aside from observing Debtor "produced no evidence of his inability to pay the spousal support/alimony or other financial obligations," the state court did not comment on the then current respective financial positions of the parties or address the welfare of the parties' children or any other factor that might have indicated it intended the award to serve as an additional support obligation. (Exhibit D at 4.) Instead the state court focused on attempting to stem Debtor's contemptuous behavior. Indeed, in addition to imposing a jail sentence for each count, the state court warned it would pierce the corporate veil of Debtor's three limited liability companies if Debtor did not purge his contempt.

Based on the record reviewed and analyzed above, this Court concludes the state court did not intend the obligation created by this award to be in the nature of alimony, maintenance or support. In sum, a preponderance of the evidence does not support Defendant's argument.

(B) Disposition of the $4,560.00 Attorney Fee Award Under the Second Contempt Order

The eight count contempt action did include one count to enforce child support and another to enforce child medical expenses. That, however, was in addition to five counts addressing Debtor's failure to comply with charging orders and various aspects of the Decree's distribution of property. Aside from observing Debtor "is healthy, gainfully employed, and was awarded hundreds of thousands of dollars of assets in the parties' dissolution," the state court did not comment on the then current respective financial positions of the parties or address the welfare of the parties' children or any other factor that might have indicated it intended the award to serve as an additional support obligation. (Exhibit G at 2.)

In its August 23, 2019 order, the state court noted the withdrawal of the count to enforce spousal support/alimony at the commencement of the contempt hearing was due to the August

7, 2019 decision from the appellate court. It did not discuss the appellate court's treatment of the spousal support/alimony provisions in the Decree. If the state court intended for the award to constitute a support obligation under the changed circumstances, it did not mention or even hint at such a disposition.

Based on the record reviewed and analyzed above, this Court concludes the state court did not intend the obligation created by this award to be in the nature of alimony, maintenance or support. In sum, a preponderance of the evidence does not support Defendant's argument.

(C) Disposition of the $3,990.00 Attorney Fee Award Under the Sanctions Order

It is not entirely clear from Exhibits I and J what specific counts were advanced in the state court action Debtor and his limited liability companies brought against Defendant and others. The state court did not make any observation about the then current respective financial positions of the parties or address the welfare of the parties' children or any other factor that might have indicated it intended the award to serve as an additional support obligation. Notably, the award was based on Iowa Rule of Civil Procedure 1.413(1) and (2) which impose such fees on a party filing improper or frivolous suits, respectively. The reliance on this rule, without any findings suggesting the award was intended as support, indicates the state court's purpose was to punish Debtor for his litigious behavior.

Citing *In re Trentadue*, 837 F.3d 743 (7th Cir. 2016), Defendant argues attorney fees for "overtrial" against a debtor's former spouse may be treated as a domestic support obligation. *Trentadue*, however, dealt with an award of attorney fees arising solely from a dispute over custody, placement, health insurance and child support. *Id.* at 746. Moreover, as pointed out by the United States Court of Appeals for the Seventh Circuit, the state court made specific findings about the parties' financial positions before assigning attorney fees. *Id.* at 750.

Based on the record reviewed and analyzed above, this Court concludes the state court did not intend the obligation created by this award to be in the nature of alimony, maintenance or support. In sum, a preponderance of the evidence does not support Defendant's argument.

<u>Claim 11-3 (Hold Harmless Provision Regarding Back Taxes)</u>

Defendant argues the state court assigned the tax debt to Debtor based on the same findings regarding the relative earning capacities of the parties which underlie the $20,000.00 attorney fee award. Debtor contends the hold harmless provision was part of the state court's distribution of the marital assets and debts.

The state court made no specific findings regarding its treatment of the back taxes. However, it did consider how best to divide the "major property and business assets of the parties" in light of their disagreements regarding the shared businesses and decided "the best way to resolve this impasse, although not ideal, is to award substantially all of the parties' assets and debts to respondent, provide for a cash payment and alimony to be payable to petitioner, and allow the respondent to run the businesses as he sees fit." (Exhibit A at 5.) It appears, therefore, the state court assigned the tax debt to Debtor and ordered him to indemnify and to hold Defendant harmless to effectuate the division of marital property rather than to provide support for the Defendant. Furthermore, in the property settlement exhibit attached to the state court's Findings of Fact and Conclusion of Law, the back taxes appear as one of several line items and in the same format as other debts, such as medical bills and student loans. (<u>Id.</u> at 24.) Unlike the attorney fee award, the treatment of the back taxes in this exhibit implies their inclusion is an integral part of the division of property.

Based on the record reviewed and analyzed above, this Court concludes the state court did not intend the hold harmless obligation to be in the nature of alimony, maintenance or support. In sum, a preponderance of the evidence does not support Defendant's argument.

Lastly, with regard to both the attorney fee awards and the hold harmless provision, this Court acknowledges Defendant responded "[y]es" when her counsel asked whether "the need to pay these attorneys' fees and also not receiving your tax refunds has affected your children financially and emotionally." (Tr. 35, ll. 22-25.) However, immediately prior to that summary question and response, Defendant's limited testimony revealed she was able to address her

children's immediate financial needs but found it difficult to provide them with extra things and, as for any emotional impact, Defendant stated she "continued to have them in counseling" but provided no details. (Tr. 35, ll. 2-14.) Given the record before this Court, such testimony by itself does not support finding that it would have been difficult for Defendant and the parties' two children to subsist without the receipt of the post dissolution attorney fee awards and the protection of the hold harmless provision at the specific times those obligations were created by the First Contempt Order, the Second Contempt Order, the Sanctions Order and the Decree. Despite the liberal construction afforded exceptions from discharge for domestic support obligations, the record does not support legitimately characterizing these obligations as being in the nature of alimony, maintenance or support.

CONCLUSION

WHEREFORE, for the reasons set forth in this Memorandum of Decision, the Court finds that:

(1) The attorney fee award of $20,000.00 under the Decree of Dissolution is a nondischargeable domestic support obligation that Debtor must pay in full during the term of the Chapter 13 plan. Therefore $20,000.00 of Claim 9-3 is allowed as a priority unsecured claim.

(2) Attorney fees of $7,050.00 under the First Contempt Order, $4,560.00 under the Second Contempt Order and $3,990.00 under the Sanctions Order are not domestic support obligations and will be discharged if Debtor obtains an order of discharge in this Chapter 13 case. Therefore $15,600.00 of Claim 9-3 is allowed as a general unsecured claim.

(3) The hold harmless provision regarding back tax debt is not a domestic support obligation and will be discharged if Debtor obtains an order of discharge in this Chapter 13 case. Therefore Claim 11-3 is allowed as a general unsecured claim in the amount of $7,497.00.

A separate Order consistent with these findings and a separate Judgment regarding the nondischargeable obligation shall be entered accordingly. Furthermore, the status of the modified plan and the automatic stay shall be noticed for hearing in the related Chapter 13 case.

/s/ Lee M. Jackwig
Lee M. Jackwig
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Adversary Proceeding:
Chapter 13 Trustee and her attorney; and
Mark Wade Curtis